IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| J&J SPORTS PRODUCTIONS, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | No. 14-2496 |
| | : | |
| CARMEN CRUZ, et al. | : | |

### MEMORANDUM

**Juan R. Sánchez, J.**                                                                                   **May 18, 2015**

      Plaintiff J & J Sports Productions, Inc. brings claims against Defendants Carmen Cruz, individually d/b/a Lilly's Restaurant, and Rivera, Inc., d/b/a Lilly's Restaurant, for commercial piracy, in violation of the Communications Act of 1934, 47 U.S.C. § 605.[1] J&J asserts that on May 5, 2012, Defendants unlawfully intercepted and displayed a pay-per-view sports program at their restaurant, Lilly's Restaurant. For the following reasons, default and default judgment in the amount of $10,640 will be entered against Rivera and in favor of J&J.[2]

**BACKGROUND**

      J&J is a distributor and licensor of certain closed circuit and pay-per-view sports programming. It obtained the nationwide commercial distribution (closed circuit) rights to *Floyd Mayweather, Jr. v. Miguel Cotto, WBA Super World Light Middleweight Championship Fight Program* (the Program) that took place on Saturday, May 5, 2012. J & J entered into sublicenses with third parties allowing them to exhibit the Program, which was broadcasted by an encrypted satellite signal.

---

[1] J&J also listed two additional claims in its Complaint: (1) violation of the Cable Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 553, et seq. (Count II), and (2) state law conversion (Count III). As it indicated in its motion for summary judgment, however, J&J only seeks relief as to § 605.

[2] The Court addresses the judgment as to Cruz by separate Memorandum and Order.

Defendant Rivera owns and operates Lilly's Restaurant in Reading, Pennsylvania. J&J alleges Rivera unlawfully intercepted and showed the Program at the restaurant on May 5, 2012. J&J sent an investigator to Lilly's, who confirmed that the fight was shown on that date to patrons.

J&J completed service on Rivera on August 25, 2014, by serving Cruz, who is an officer of Rivera and the authorized agent for service of process, at 338 W. Windsor Street, Reading, Pennsylvania, 19601.[3] On September 12, 2014, Cruz filed a pro se Answer on behalf of herself, but Rivera did not file any kind of response, nor did any counsel enter an appearance on behalf of Rivera. On September 24, 2015, J&J requested default against Rivera for failure to appear or otherwise respond to the summons and Complaint within the requisite time, and the Clerk of Court entered default. Because Cruz had filed a response, the Court scheduled a Rule 16 conference for October 2, 2015, and the Order was sent to both Rivera and Cruz at 611 Chestnut Street, Reading, Pennsylvania 19602, which J&J listed as the Defendants' address in its Certification as to Interested Parties attached to its Complaint.[4] On October 1, 2014, the day before the conference, these Orders were returned by the U.S. Post Office as undeliverable. The Court rescheduled the conference to October 22, 2014, and directed the Clerk to send the Order for Cruz to the Windsor Street address where she was properly served.[5] The Order for Rivera was still sent to the Chestnut Street address. The Order sent to Rivera was again returned to the

---

[3] The Proof of Service shows the Complaint and summons were left with Lisette Gonzalez at 338 W. Windsor Street and lists Gonzalez as the "co-occupant/daughter."

[4] In her Answer, Cruz confirmed this address was the operating address of Lilly's Restaurant, which is now out of business.

[5] As explained in the Court's separate Order and Memorandum as to the judgment against Cruz, the Court inadvertently inverted the house number for the Windsor Street address, but this error has no impact on the case against Rivera.

Court by the U.S. Post Office as undeliverable. On October 13, 2014, J&J withdrew its request for entry of default as to Rivera and default was vacated. Neither Rivera nor Cruz appeared at the October 22, 2014, Rule 16 conference. The Court entered a case Management Order, and the case proceeded to discovery. This Order was not returned by the U.S. Post Office.

On February 19, 2015, J&J filed a motion for summary judgment, requesting judgment as to both Cruz and Rivera. It attached to its motion (1) a declaration of Thomas P. Riley, Esq. (hereinafter Riley Declaration), counsel for J&J, with attached requests for admissions that were sent to both Defendants but to which neither Defendant responded, (2) an affidavit by private investigator Matthew Cavallo who visited Lilly's restaurant on May 5, 2012 (hereinafter Cavallo Affidavit), and (3) an affidavit from J&J's President Joseph M. Gagliardi (hereinafter Gagliardi Affidavit).

**DISCUSSION**

Both 47 U.S.C. § 553 and 47 U.S.C. § 605 prohibit the unauthorized interception and exhibition of communications. To obtain relief under either, a plaintiff must show that "Defendants intercepted a broadcast, Defendants were not authorized to intercept the broadcast, and Defendants showed this broadcast to others." *J & J Sports Prod., Inc. v. Gallegos*, No. 08-201, 2008 WL 3193157, at *3 (D.N.J. Aug. 5, 2008). "The difference between the statutes is that § 605 'encompasses the interception of satellite transmission,' while § 553 applies 'once a satellite transmission reaches a cable system's wire distribution phase.'" *Id.* (quoting *TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 207 (3d Cir. 2001)). Section 605 also allows for higher statutory damages than § 553. *See id.* A plaintiff may seek relief pursuant to only one of the

statutes, and in this case, J&J asserts violations of § 605,[6] which is a strict liability offense, *see J & J Sports Prods., Inc. v. Martinez*, No. 13-6885, 2014 WL 5410199, at *3 (E.D. Pa. Oct. 23, 2014); *J & J Sports Prods., Inc. v. Gonzalez*, No. 12-6313, 2013 WL 6022225, at *3 (E.D. Pa. Nov. 14, 2013).

J&J claims Rivera unlawfully intercepted the Program, displayed it at Lilly's Restaurant, and did so willfully and for financial gain. J&J requests $6,600 in statutory damages and $26,400 in enhanced statutory damages. It asserts these amounts are "appropriate to satisfy the dual purposes of compensating Plaintiff and acting as a deterrent against future acts of piracy by both these Defendants and others." Pl.'s Mot. for Summ. J. 8.

1. **Default Judgment**

Because Cruz, Rivera's officer, was properly served with the Complaint and summons for Rivera, Rivera was on notice of this law suit. *See* Fed. R. Civ. P. 4(h) (stating that a corporation can be served by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process"). No counsel has entered an appearance for Rivera, and Rivera has failed to respond to any filings or otherwise communicate with the Court. The Court will therefore direct the Clerk of Court to enter default as to Rivera and will construe J&J's motion for summary judgment as a motion for default judgment as to Rivera.[7] *See* Fed. R. Civ. P. 55(a)

---

[6] In the Third Circuit, a defendant cannot be liable under both § 553 and § 605. *See J & J Sports Prod., Inc. v. Long*, No. 08-640, 2009 WL 1563914, at *1 (E.D. Pa. June 3, 2009) (citing *TKR*, 267 F.3d. 196). J&J seeks relief pursuant to § 605 and has submitted evidence that Defendants intercepted a satellite transmission. Attached to the investigator's affidavit is a photograph of the front of Lilly's Restaurant which shows a satellite dish attached to the front of the building. *See* Cavallo Affidavit 4.

[7] It is not clear to the Court why J&J withdrew its request for entry of default. The fact that Rivera did not receive the Orders for the Rule 16 conferences or possibly the Case Management

4

("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."); Fed. R. Civ. P. 55(b)(2) (explaining that following an entry of default by the Clerk of Court, a court may enter default judgment against the defaulting party).

Upon entry of default, a plaintiff's "well-pleaded allegations are admitted and accepted, but the Court need not accept the moving party's legal conclusions or factual allegations relating to the amount of damages." *E. Elec. Corp. of N.J. v. Shoemaker Const. Co.*, 652 F. Supp. 2d 599, 605 (E.D. Pa. 2009); *see Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (citing 10 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2688 (2d ed. 1983)). Rather than rely on the allegations in the complaint to determine damages, "[t]he court may conduct hearings or make referrals." Fed. R. Civ. P. 55(b)(2)(B); *see Pearson v. Sonnet Trucking, Inc.*, No. 09-5917, 2011 WL 2923689, at *2 (E.D. Pa. July 20, 2011). The court may also "rely upon detailed affidavits submitted by the parties." *J & J Sports Prods., Inc. v. Puentenueva*, No. 14-3226, 2014 WL 7330477, at *2 n.1 (E.D. Pa. Dec. 22, 2014) (citing *E. Elec. Corp. of N.J.*, 657 F. Supp. 2d at 552); *see Amresco Fin. I L.P. v. Storti*, No. 99-2613, 2000 WL 284203, at *2 (E.D. Pa. Mar. 13, 2000); *see also United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989) (explaining that a default judgment may be entered without an evidentiary hearing on damages so long as the amount of damages is "capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits").

Here, construing J&J's motion for summary judgment as a motion for default judgment as to Rivera, the Court will consider the affidavits and declaration from J&J's investigator, president, and counsel as part of the record. Because the claims against Rivera should not have

---

Order does not impact J&J's right to receive a default judgment as to Rivera because Rivera was properly served but failed to respond.

5

entered discovery, however, the Court will not consider the unanswered requests for admissions attached to the Riley Declaration in its determination of damages.[8]

### 2. Statutory and Enhanced Damages under 47 U.S.C. § 605

Under § 605, a party aggrieved may recover either actual damages plus profits attributable to the violator or statutory damages. In this case, J&J alleges it is impossible to calculate the full extent of the profits lost and the additional damages sustained, so it requests statutory damages. Under the statutory damages provision, "the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). Because "[t]here are no mens rea or scienter elements for a non-willful violation of 47 U.S.C. § 605(a)," Defendants are strictly liable for actual or statutory damages. *See J & J Sports Prods., Inc. v. De La Cerda*, No. 11-1896, 2013 WL 5670877, at *5 (E.D. Cal. Oct. 16, 2013).

Section 605 also provides for enhanced damages: "In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation . . . ." 47 U.S.C. § 605(e)(3)(C)(ii).

While the terms of the statute gives courts direction in assessing damages, neither the statutory nor enhanced damages sections explain what factors a court should consider and, as

---

[8] Federal Rule of Civil Procedure 36 requires a party to respond to requests for admissions within thirty days after service of the request. Fed. R. Civ. P. 36(a)(3). If a timely response is not received, the matters in the requests for admissions are deemed admitted and thus, "conclusively established." Fed. R. Civ. P. 36(a)(3), 36(b).

J&J explains in its motion, the Third Circuit has not established a formula for calculating damages under § 605. *See* Pl.'s Mot. for Summ. J. 10; *see also Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 274 (E.D. Pa. Mar. 11, 2014).

### A. Statutory Damages

#### i. Measurement Generally

J&J asserts that the primary goal of piracy awards is deterrence, both specific and general, and argues that the Court should consider deterrence in calculating the statutory damages for this case. In a recent opinion regarding damages under § 553, the district court in *Joe Hand Promotions, Inc. v. Yakubets*, following the reasoning of the First Circuit in *Charter Commc'ns Entm't I, DST v. Burdulis*, 460 F.3d 168 (1st Cir. 2006) and the District of Massachusetts in *Comcast of Mass. I, Inc. v. Naranjo*, 303 F. Supp. 2d 43, 49 (D. Mass. 2004), found that (1) statutory damages should be based on an estimation of actual damages, and (2) "§ 553's overall structure favors weighing deterrence under the enhanced damages provision and not under the statutory damages provision." *Yakubets*, 3 F. Supp. 3d at 275 ("While deterrence is a universal issue addressed by § 553 . . . deterrence as a factor is better considered under the enhanced damages rubric, which requires a showing of willfulness, than the statutory damages provision, which imposes strict liability." (citation omitted)). Section 605 parallels § 553 in language and structure, and, similar to § 553, nothing in the actual or statutory damages subsections of § 605 suggest that deterrence is an appropriate decisional factor. Instead, the statute suggests statutory damages is merely an alternative to actual damages. *Accord id.* (citing *Charter Commc'ns Entm't I, DST v. Burdulis*, 460 F.3d 168, 181 (1st Cir. 2006)).

In addition, the statutory damages for § 605 do not require intentional or willful misconduct, and can be awarded for mere negligence, contradicting J&J's deterrence rationale.

7

Willful violations lead to criminal penalties, *see* 47 U.S.C. § 605(e)(2), and enhanced damages, *see id.* § 605(e)(3)(C)(ii), but actual and statutory damages are awarded without any showing of mens rea or even if the conduct is merely negligent, *accord Yakubets*, 3 F. Supp. 3d at 276 (citing cases). Further, the statutory damages are capped at $10,000 for each violation. As a consequence, if deterrence was a factor in statutory damages and a party suffered actual damages greater than $10,000, the party would not be able to receive any deterrence premiums, even though violators causing the largest amounts of harm are those most deserving of the additional deterrence premium. *See id.* at 276 (citing *Comcast of Mass. I, Inc. v. Naranjo*, 303 F. Supp. 2d 43, 49 (D. Mass. 2004)).

In sum, it appears Congress did not intend that a deterrence factor be part of the calculation for statutory damages. Following the reasoning of *Yakubets*, *Burdulis*, and *Naranjo* the Court finds that, according to the plain language of the statute, statutory damages are merely an alternative to actual damages. The Court should not double count deterrence by considering it first in an actual or statutory damages award and then again into an enhanced damages award. Therefore, the Court will calculate statutory damages based on a calculation of actual damages without considering deterrence.

### ii.   Factors to Include in Statutory Damages

The statutory damages provision authorizes courts to use their discretion to fashion factors to estimate, rather than compute actual damages. *Id.* at 277 (citing *Coxcom, Inc. v. Chaffee*, No. 05-107S, 2007 WL 1577708, at *3 (D.R.I. May 31, 2007), *aff'd*, 536 F.3d 101 (1st Cir. 2008)). In estimating actual damages, the Court should consider first what the defendant would have paid had he obtained a lawful license. Next, according to the actual damages statute, the court may consider "any profits of the violator that are attributable to the violation which are

not taken into account in computing the actual damages." 47 U.S.C. § 605(e)(3)(C)(i)(I). Evidence of profits may be too speculative to award if the plaintiff cannot show that the profits are "attributable to the violation," and it is in the court's discretion how much additional damages a plaintiff should receive. *See Yakubets*, 3 F. Supp. 3d at 280 (citation omitted). Here, in estimating profits, the Court will consider

> "(1) the size of the establishment; (2) the number of patrons at the establishment, taken, to the extent possible, as the number of patrons present because of the interception (to which evidence of advertising to attract customers may be relevant); (3) the number, size, and position of screens displaying the broadcast (a factor to be considered in conjunction with (1) and (2) as an indication of who might be there specifically to watch); (4) any cover charge levied because of the interception; (5) what additional money patrons spent because of the interception (i.e., the amounts spent by those who otherwise would not have come, plus any other premiums or greater spending by those who would have come anyway); and (6) any such other factors as may appear relevant in the case before the court."

*Id.*

### iii. Estimation of Actual Damages in this Case

In this case, according to the rate card, the licensing fee for a commercial establishment with Lilly's capacity to show the Program was $2,200. Gagliardi Affidavit Ex. 2. Therefore, J&J is entitled to at least $2,200 in actual damages.

As for profits attributable to the violation, Investigator Cavallo, who observed the Program being displayed unlawfully at Lilly's Restaurant, recorded that there were approximately 46 people in the bar (at three separate times he noted the headcount was 47, 42, and 49). He noted there were two televisions located behind the bar and he did not pay a cover charge. The Court has no information regarding Lilly's food and drink prices, how many people are usually in the bar on a Saturday night, or if everyone present was close enough to one of the two televisions that it could be assumed they were watching the Program. J&J did not send any

investigators on other nights at similar times to see how many patrons usually visit Lilly's. Cavallo also did not record or taken a picture of Lilly's menu and its prices, nor did he inquire to the waitress how many patrons are usually at the bar on a Saturday night.

It is reasonable to estimate that half of the individuals present came solely because of the Program and each spent $20 on food and drink, totaling 23 x $20 = $460. The total amount Lilly's received that night attributable to the violation is therefore $460. The total statutory damage amount is the $2,200 license fee plus an estimated $460 in profits, for a total of $2,660. Given the lack of evidence and the focus on revenue rather than profit, these are generous allowances. *See Yakubets*, 3 F. Supp. 3d at 281.

### B. Enhanced Damages

Enhanced damages, on the other hand, should include a deterrence premium and a court can increase the award of damages by up to $100,000 for each violation if "the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii).

#### i. Willful Violation

The *Yakubets* Court noted "[n]either the Supreme Court nor the Third Circuit Court of Appeals has interpreted what 'willfully' requires under . . . 47 U.S.C. § 605(e)(3)(C)(ii)," but concluded based on Supreme Court precedent, similarities with the criminal provision of the statute, and the legislative history that willfulness as applied in the enhanced damages portion of § 553 "requires intent and either knowledge of or reckless disregard for the illegality of the conduct, and not mere negligence." *Yakubets*, 3 F. Supp. 3d at 282-83. These factors also bear on the willfulness factor of § 605 enhanced damages. Therefore, for J&J to receive enhanced

damages, Rivera must have intentionally intercepted the signal and had knowledge of or reckless disregard as to the unlawfulness of that interception.

In this case, willfulness can be found in the particular nature of satellite programming. Interception of a transmission "permits a reasonable inference of *intentionality* to be drawn to substantiate what might otherwise be a conclusory allegation." *Id.* at 287. As for the knowledge or reckless disregard factor, "it is hard to believe that a defendant who acts intentionally to intercept [a transmission] unlawfully does not know the illegality of his actions (or at least recklessly disregards the distinct possibility of unlawfulness)." *Id.* at 288; *see* Gagliardi Affidavit ¶ 9 (stating that J&J's programming is not and cannot be mistakenly, innocently, or accidently intercepted). Thus, given that there is proof the Program was shown unlawfully at Rivera, Inc. (i.e., at Lilly's Restaurant), the Court may infer Rivera's violation was willful.

### ii. Purposes of Commercial Advantage or Private Financial Gain

To impose enhanced damages, the Court must also find that the Defendants acted "for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). Lilly's is a commercial establishment and Investigator Cavallo recorded that it served food and alcohol and had two televisions showing the Program. Thus, Court concludes the intercepted Program was shown as an inducement for patrons to purchase food and beverages, and the violation was made for the purposes of commercial advantage or private financial gain.

### iii. Measurement of Enhanced Damages

The primary concern with the imposition of enhanced damages is deterrence. A simple multiplier "best achieves the dual goals of general and specific deterrence" and "vindicates Congress's interest in generally deterring theft of cable services . . . as well as addresses [the

enhanced damage's subsection's] 'commercial advantage or private financial gain' prerequisite by forcing the defendant to disgorge a multiple of its profits (and thus also specifically deters)." *Yakubets*, 3 F. Supp. 3d at 291. Courts applying multipliers have generally awarded anywhere from three to six times the award for enhanced damages. *Id.* at 290-91. Because in this case it does not appear that Rivera is a repeat offender, the minimum multiplier of three is appropriate. Therefore, the enhanced damages amount is three times the total statutory damages of $2,660, or $7,980.

With a total statutory damage amount of $2,660 and an enhanced damages amount of $7,980, the Court will impose a total default judgment in favor of J&J Sports Productions, Inc. and against Defendant Rivera, Inc. in the amount of $10,640. The Court will also allow J&J fourteen days from the date of the order entering judgment to submit evidence and costs of attorneys' fees pursuant to 47 U.S.C. § 605(e)(3)(B)(iii).

An appropriate order follows.

                BY THE COURT:

                /s/ Juan R. Sánchez
                Juan R. Sánchez, J.