IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| J&J SPORTS PRODUCTIONS, INC. | : | CIVIL ACTION |
| v. | : | No. 14-2496 |
| CARMEN CRUZ, et al. | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                         May 18, 2015

Plaintiff J&J Sports Productions, Inc. brings claims against Defendants Carmen Cruz, individually d/b/a Lilly's Restaurant, and Rivera, Inc., d/b/a Lilly's Restaurant, for commercial piracy, in violation of the Communications Act of 1934, 47 U.S.C. § 605.[1] J&J asserts that on May 5, 2012, Defendants unlawfully intercepted and displayed a pay-per-view sports program at their restaurant, Lilly's Restaurant. For the following reasons, the Court will grant J&J's motion for summary judgment as to Cruz and enter judgment in the amount of $2,200 against Cruz and in favor of J&J.[2]

**BACKGROUND**

J & J is a distributor and licensor of certain closed circuit and pay-per-view sports programming. It obtained the nationwide commercial distribution (closed circuit) rights to *Floyd Mayweather, Jr. v. Miguel Cotto, WBA Super World Light Middleweight Championship Fight Program* (the Program), which took place on Saturday, May 5, 2012. J & J entered into sublicenses with third parties allowing them to exhibit the Program, which was broadcasted by an encrypted satellite signal.

---

[1] J&J also listed two additional claims in its Complaint: (1) violation of the Cable Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 553. (Count II), and (2) state law conversion (Count III). As it indicated in its motion for summary judgment, however, J&J only seeks relief pursuant to § 605.

[2] The Court addresses the judgment as to Rivera, Inc. by separate Memorandum and Order.

Cruz is an officer of Rivera, Inc., which owns and operates Lilly's Restaurant in Reading, Pennsylvania, and she is the legal operator of Lilly's Restaurant. J&J asserts Cruz unlawfully intercepted and displayed the Program and/or directed employees of Lilly's Restaurant to unlawfully intercept and display the Program at the restaurant on May 5, 2012. J&J sent an investigator to Lilly's who confirmed that the fight was shown on that date to patrons.

J&J filed its Complaint on April 30, 2014, and served Cruz with the summons and Complaint on August 25, 2014, by leaving a copy with her daughter at their house located at 338 W. Windsor Street, Reading, Pennsylvania, 19601. The Proof of Service lists Cruz's daughter as the "co-occupant/daughter." On September 12, 2014, Cruz filed a pro se answer to the Complaint, listing the Windsor Street address. By Order dated September 19, 2014, this Court directed that a Rule 16 conference would be held on October 2, 2014, and the Clerk of Court sent the Order to 611 Chestnut Street, Reading, Pennsylvania, 19602, which is the former address of Lilly's Restaurant and the address J&J listed for Cruz on the Certification as to Interested Parties attached to the Complaint. The day before the conference, however, the U.S. Post Office returned the Order as undeliverable. The Court rescheduled the conference to October 22, 2014, and directed the Clerk to mail the Order rescheduling the conference to Cruz at the Windsor Street address. Although the Court mistakenly inverted the house number for the Windsor Street address on the Order, this Order was not returned as undeliverable. Cruz, however, did not appear at the rescheduled conference, and she did not otherwise notify the Court. The Court entered a Case Management Order, and the case proceeded to discovery. It is not clear to which address the Clerk sent the Case Management Order, but it was not returned as undeliverable. The Court referred the case to Magistrate Judge Marilyn Heffley for a settlement conference, but because Judge Heffley was unable to reach Cruz, she cancelled the conference.

On February 19, 2015, J&J filed a motion for summary judgment, requesting judgment as to both Cruz and Rivera. It attached to its motion (1) a declaration of Thomas P. Riley, Esq. (hereinafter Riley Declaration), counsel for J&J, with attached requests for admissions that were sent to both Defendants but to which neither Defendant responded, (2) an affidavit by private investigator Matthew Cavallo who visited Lilly's restaurant on May 5, 2012 (hereinafter Cavallo Affidavit), and (3) an affidavit from J&J's President Joseph M. Gagliardi (hereinafter Gagliardi Affidavit). By Order dated March 13, 2015, the Court scheduled an oral argument on the motion, but again directed the Clerk to mail the Order to Cruz at the incorrect Windsor Street address. This Order was not returned as undeliverable.

On March 30, 2015, upon realizing it had listed the incorrect Windsor Street address in its previous Orders, the Court rescheduled the oral argument for April 29, 2015, and directed the Clerk of Court to send that Order and all previous Orders to Cruz at the correct Windsor Street address. On the day of the argument, Cruz's daughter telephoned the Court to say that Cruz was unable to attend the proceeding scheduled for that day and Cruz does not speak English. Because it was clear Cruz had adequate notice of the proceeding, the Court instead held a brief argument on the motion; counsel for J&J was present in person and Cruz participated via telephone, with her daughter acting as a translator.

**DISCUSSION**

Both 47 U.S.C. § 553 and 47 U.S.C. § 605 prohibit the unauthorized interception and exhibition of communications. To obtain relief under either, a plaintiff must show that "Defendants intercepted a broadcast, Defendants were not authorized to intercept the broadcast, and Defendants showed this broadcast to others." *J & J Sports Prod., Inc. v. Gallegos*, No. 08-201, 2008 WL 3193157, at *3 (D.N.J. Aug. 5, 2008). "The difference between the statutes is that

§ 605 'encompasses the interception of satellite transmission,' while § 553 applies 'once a satellite transmission reaches a cable system's wire distribution phase.'" *Id.* (quoting *TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 207 (3d Cir. 2001)). Section 605 also allows for higher statutory damages than § 553. *See id.* A plaintiff may seek summary judgment pursuant to only one of the statutes, and in this case, J&J asserts violations of § 605,[3] which is a strict liability offense, *see J & J Sports Prods., Inc. v. Martinez*, No. 13-6885, 2014 WL 5410199, at *3 (E.D. Pa. Oct. 23, 2014); *J & J Sports Prods., Inc. v. Gonzalez*, No. 12-6313, 2013 WL 6022225, at *3 (E.D. Pa. Nov. 14, 2013).

J&J claims Cruz unlawfully intercepted the Program, displayed it at Lilly's Restaurant, and did so willfully and for financial gain. J&J requests $6,600 in statutory damages and $26,400 in enhanced statutory damages. It asserts these amounts are "appropriate to satisfy the dual purposes of compensating Plaintiff and acting as a deterrent against future acts of piracy by both these Defendants and others." Pl.'s Mot. for Summ. J. 8.

Cruz has failed to respond or file anything with the Court since filing her Answer. Local Rule 7.1 provides that "[i]n the absence of timely response, [a] motion may be granted as uncontested except as provided under Fed. R. Civ. P 56." Local R. Civ. P. 7.1(c). Under Federal Rule of Civil Procedure 56, the court may not enter summary judgment on the basis of the defendant's failure to respond without determining that judgment for the plaintiff is appropriate. Fed. R. Civ. P. 56(e)(3); *see Anchorage Assoc. v. V. I. Bd. of Tax Rev.*, 922 F.2d 168, 175 (3d Cir. 1990) (relying on a similar local rule in the District Court of the Virgin Islands). A motion

---

[3] In the Third Circuit, a defendant cannot be liable under both § 553 and § 605. *See J & J Sports Prod., Inc. v. Long*, No. 08-640, 2009 WL 1563914, at *1 (E.D. Pa. June 3, 2009) (citing *TKR*, 267 F.3d. 196). J&J seeks relief pursuant to § 605 and has submitted evidence that Defendants intercepted a satellite transmission. Attached to the investigator's affidavit is a photograph of the front of Lilly's Restaurant which shows a satellite dish attached to the front of the building. *See* Cavallo Affidavit 4.

for summary judgment will only be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court must review all of the evidence in the record and draw all reasonable inferences in favor of the nonmoving party. *See Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). A factual dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." (internal quotation marks omitted)).

For purposes of J&J's motion for summary judgment, the Court will consider the affidavits and declaration from J&J's investigator, president, and counsel as part of the record. However, because it is not clear to the Court if Cruz received the requests for admissions, let alone understood them given that she does not speak English, the Court will not consider the unanswered requests in its analysis.[4]

---

[4] Federal Rule of Civil Procedure 36 requires a party to respond to requests for admissions within thirty days after service of the request. Fed. R. Civ. P. 36(a)(3). If a timely response is not received, the matters in the requests for admission are deemed admitted and thus, "conclusively established." Fed. R. Civ. P. 36(a)(3), 36(b). Here, however, the Court does not know if Cruz received J&J's requests for admissions, and even if she had, it is not clear she understood them. In addition, several of the requests appear to contradict each other. For example, requests for admissions 23, 24, 26, 27, and 28 state different ways Cruz could have unlawfully obtained the Program, and it is unlikely, if not impossible, that they are all true. Given these factors, the Court finds it is not in the interest of justice to pick and choose which of the requests are "admitted," and will therefore not consider the requests as part of the record.

1. **Individual Liability**

J&J requests the Court hold Cruz vicariously and therefore jointly liable with Rivera, Inc. for the violation of § 605.[5] An individual can be held jointly liable with his corporation. *See Zubik v. Zubik*, 384 F.2d 267, 275 (3d Cir. 1967) ("[A]n officer of a corporation who takes no part in the commission of the tort committed by the corporation is not personally liable to third persons for such a tort, nor for the acts of other agents, officers or employees of the corporation in committing it, unless he specifically directed the particular act to be done, or participated, or cooperated therein."). J&J proposes that for Cruz to be liable for piracy, she must have had a right and ability to supervise the violations and a strong financial interest in the activity. J&J's proposed standard "applies to the question of whether a *corporate* defendant may be held vicariously liable for a violation in his or her individual capacity and as an officer or director of the corporation when *the corporation*, not the individual, is alleged to have committed the violation." *J & J Sports Prods., Inc. v. Flores*, 913 F. Supp. 2d 950, 955 (E.D. Cal. 2012) (citing *J & J Sports Productions, Inc. v. Ribeiro*, 562 F. Supp. 2d 498, 501 (S.D.N.Y. 2008)).

The standard suggested by J&J originates from a Second Circuit Court of Appeals' decision which crafted a test for vicarious liability in the copyright context. *See Softel, Inc. v. Dragon Med. & Scientific Commuc'ns, Inc.*, 118 F.3d 955 (2d Cir. 1997). The Court in *Joe Hand Promotions, Inc. v. Yakubets* carefully analyzed the substance of the *Softel* test and its application to violations under § 553, finding that the financial interest requirement can only be met if the infringement causes a financial benefit to accrue to the defendant, and not simply because the individual defendant is president and/or a shareholder of the codefendant

---

[5] J&J does not directly state that the Court should find Cruz vicariously liable, but given the theory of liability proposed by J&J described above and because the Court will not deem the requests for admissions admitted, J&J can only establish Cruz's liability based on a theory of vicarious liability.

corporation. *See* 3 F. Supp. 3d 261, 295-96 (E.D. Pa. Mar. 11, 2014) (citations omitted). After a thorough analysis of the copyright case law, the *Yakubets* Court created a standard to hold an individual vicariously liable for the acts of his company for a § 553 violation: An individual may be liable if he "(1) has the right and ability to supervise the violative activity, although he need not actually be supervising, because he need not know of the violative activity, and (2) has a *direct* financial interest in the violation, i.e., financial benefits, even if not proportional or precisely calculable, that directly flow from the violative activity." *Id.* at 296 (emphasis added). Importantly, this standard does not require actual knowledge or supervision. *Id.* at 299. Several other courts have similarly relied upon the copyright infringement standards, including the *Softel* test, to determine liability under § 605, and have noted the importance that the financial interest of the defendant be more than a set salary he receives as an officer or shareholder of the codefendant corporation. *See, e.g.*, *Flores*, 913 F. Supp. 2d at 955 ("Requiring a plaintiff to plead and prove supervision and direct financial interest before individual liability may be imposed on a corporate actor for a section 605 violation allegedly committed on behalf of the corporation is reasonable given the nature of the corporate form."). Therefore, in this case involving § 605 violations, the Court will apply the more stringent *Yakubets* standard for vicarious liability, and J&J must demonstrate that not only does Cruz have the right and ability to supervise the violation, but she also received a financial benefit stemming directly from that violative act.

  Here, many of J&J's allegations regarding Cruz's liability are conclusory and not factually supported. For example, J&J claims that Cruz directed Lilly's employees to unlawfully intercept and display the Program.[6] Compl. ¶ 11. There are no facts suggesting Cruz was in

---

[6] In the alternative, J&J asserts the actions of the employees are directly imputable to Cruz by virtue of her acknowledged responsibility for the actions of Lilly's Restaurant. Compl. ¶ 11.

Lilly's on the night in question or that permit a reasonable inference that she authorized the interception of the Program.[7]

However, the Court finds that J&J has properly established that Cruz "had the right and ability to supervise the activities of Lilly's Restauarant [sic], which included the unlawful interception of Plaintiff's *Program*," Compl. ¶ 9, and that she "had an obvious and direct financial interest in the activities of Lilly's Restauarant [sic], which included the unlawful interception of Plaintiff's *Program*," Compl. ¶ 12. In her Answer, Cruz stated she was an officer of Rivera, Inc. and was involved in the operation of Lilly's Restaurant. Answer ¶¶ 7, 8. She also states she is "no longer the legal operator of Lily's [sic] Restaurant as the restaurant has long ago gone out of business," Answer ¶ 8, implying she was once the legal operator. J&J has submitted a Business Entity Filing History from the Pennsylvania Department of State dated April 25, 2014, which lists Cruz as the President, Vice President, and Secretary of Rivera, Inc., located at 611 Chestnut Street (Lilly's address). *See* Riley Declaration, Ex. 3. Thus, the Court finds there is no issue of fact as to Cruz's role in the company, she had the ability to supervise the violative activity (whether she did or not), and she had a direct financial interest in the conduct that violated § 605, i.e., financial benefits flowed to her because of the violative conduct. She is therefore vicariously liable for the acts of Rivera.

**2. Damages**

Under § 605, a party aggrieved may recover either actual damages plus profits attributable to the violator or statutory damages, which is an estimation of the actual damage amount plus profits. In this case, J&J alleges it is impossible to calculate the full extent of the

---

[7] The investigator described only two employees in his notes from that night—a Hispanic female he estimated to be 5'5" and a Hispanic male wearing a hat. The Court has no basis upon which to find, and J&J has not asserted, that the female described was Cruz.

profits lost and the additional damages sustained, so it requests statutory damages. Under the statutory damages provision, "the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). The statutory damages provision authorizes courts to use their discretion to fashion factors to estimate, rather than compute actual damages. *See Yakubets*, 3 F. Supp. 3d at 277 (citing *Coxcom, Inc. v. Chaffee*, No. 05-107S, 2007 WL 1577708, at *3 (D.R.I. May 31, 2007), *aff'd*, 536 F.3d 101 (1st Cir. 2008)). Because "[t]here are no mens rea or scienter elements for a non-willful violation of 47 U.S.C. § 605(a)," Defendants are strictly liable for actual or statutory damages.[8] *See J & J Sports Prods., Inc. v. De La Cerda*, No. 11-1896, 2013 WL 5670877, at *5 (E.D. Cal. Oct. 16, 2013).

Section 605 also provides for enhanced damages: "In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation . . . ." 47 U.S.C. § 605(e)(3)(C)(ii).

Vicarious liability, however, does not extend beyond actual damages, *see Yakubets*, 3 F. Supp. at 301-02, and Cruz is not liable for any profit component of the damage estimate. As the Second Circuit Court of Appeals explained in the copyright context, "[b]ecause infringement of copyright is considered a tort, the general statement often is made that all defendants concerned in the infringement are jointly and severally liable. However, this rule applies only to the

---

[8] *But see* 47 U.S.C. § 605(e)(3)(C)(iii) ("In any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $250.").

defendants['] liability for damages. Insofar as there is liability for illegal profit, the liability is several; one defendant is not liable for the profit made by another." *MCA, Inc. v. Wilson*, 677 F.2d 180, 186 (2d Cir. 1981) (internal citations omitted). While the Court may infer Cruz, as Rivera's officer and Lilly's legal operator, shared in the profits directly flowing from the violative conduct, there is no indication of how much of the profits she received as an individual.

Similarly, the Court will not impose joint liability on Cruz for any enhanced damages, because these "are not true damages, but rather penalties aimed to deter and which depend on willfulness, whereas the 'right and ability to supervise' standard does not even require knowledge." *Yakubets* 3 F.Supp. at 302.[9] Because J&J has not established Cruz personally intercepted the Program, directed her employees to intercept the Program, or had knowledge of the interception, the Court cannot conclude any conduct on her part was "willful" under the enhanced damages statute.

In sum, Cruz is liable only for actual damages and not damages related to profit or for enhanced damages for willful infringement. In this case, according to the rate card, the licensing fee for a commercial establishment with Lilly's capacity to show the Program was $2,200. Gagliardi Affidavit, Ex. 2. Cruz is therefore jointly and severally liable for the $2,200 license fee as this figure represents the actual damages estimation of the statutory damages award.

The Court will allow J&J fourteen days from the date of the order entering judgment to submit evidence and costs of attorneys' fees pursuant to 47 U.S.C. § 605(e)(3)(B)(iii).

---

[9] The *Yakubets* Court pointed out that "[n]either the Supreme Court nor the Third Circuit Court of Appeals has interpreted what 'willfully' requires under . . . 47 U.S.C. § 605(e)(3)(C)(ii)," but concluded based on Supreme Court precedent, similarities with the criminal provision of the statute, and the legislative history that willfulness under § 553 "requires intent and either knowledge of or reckless disregard for the illegality of the conduct, and not mere negligence." *Id.* at 282-83. These factors also bear on the use of "willfulness" in § 605. Therefore, for J&J to receive enhanced damages, it has to demonstrate Cruz intentionally intercepted the signal and had knowledge of or reckless disregard as to the unlawfulness of that interception.

An appropriate order follows.

                                          BY THE COURT:

                                          /s/ Juan R. Sánchez
                                          Juan R. Sánchez, J.